**BIG CHIEF EATIN' POST NO. 19, INC.,**
Appellant,

v.

**NEWPORT SHOPPING CENTER, INC., a Kentucky Corporation, Newport Enterprises, Inc., a Kentucky Corporation, and Walgreen Company, an Illinois Corporation, Appellees.**

Court of Appeals of Kentucky.

May 28, 1971.

Carl H. Ebert and C. Houston Ebert, Ebert, Moebus, Cook, Kirchhoff & Neisch, Newport, for appellant.

Lorimer W. Scott and William J. Wise, Newport, Lawrence H. Williams, Cleveland, Ohio, for appellees, Newport Shopping Center, Inc., and Newport Enterprises, Inc.

Benton, Benton, Luedeke & Rhoads, Newport, for appellee, Walgreen Co.

CULLEN, Commissioner.

Big Chief Eatin' Post No. 19, Inc., brought suit against Newport Shopping Center, Inc., and Walgreen Company seeking an injunction and damages by reason of an alleged violation by the defendants of a restrictive covenant against competition contained in a lease from Newport Shopping Center to Big Chief. The circuit court, after a trial without a jury of the injunction issue, found that Big Chief had no sustainable claim for relief, either by way of injunction or damages, and entered judgment dismissing the action. Big Chief appeals from that judgment.

Newport Shopping Center, as its name implies, operates a shopping center in Campbell County, Kentucky. In 1962 it executed a ten-year lease of premises in its shopping center, to Big Chief, to be used for restaurant purposes. The lease contained the following restrictive covenant:

"During the term of this lease and any renewals thereof Lessor agrees that no other restaurant, store or carry out store offering for sale food prepared in said restaurant, store or carry out store shall be permitted to occupy or use any store room or other premises in the said Newport Shopping Center or to occupy or use any of the property of the Lessor located within one-half (½) mile of the premises leased herein except *restaurants and/or snack bars presently located on Lessor's property which the Lessor agrees shall be limited by the terms of*

*Lessor's existing leases with the owners thereof."* (Italics ours)

A few days later Big Chief signed a supplemental writing, as follows:

"It is my understanding that under my lease with the Newport Shopping Center, Inc., Section 16, Page 10 prohibits lease renewals of present snack bars and/or restauarants. This was not our intent.

Newport Shopping Center, Inc., has the right to extend or release to others and maintain restaurant facilities in all *locations where they are presently existing or allowed by current leases."* (Italics ours)

Since the date of the lease Big Chief has operated a restaurant on the leased premises.

At the time the lease to Big Chief was executed, Walgreen was operating a drug store in the shopping center under a ten-year lease which was to terminate in November 1965 but which gave Walgreen options for three successive five-year extensions. Walgreen's store was on a lot having a frontage of 73½ feet and a depth of 135 feet, with a usable store area of 9,700 square feet. In a corner of the store Walgreen operated a snack bar or restaurant, with a seating capacity of 60 seats. Its lease specifically authorized it to serve food.

In October 1964 Walgreen exercised its first option for a five-year extension, extending the lease to November 1970. However, in July 1965 Newport Shopping Center and Walgreen entered into an agreement which they claim was an "extension" of the original lease but which Big Chief says was a completely new lease. Under the agreement Newport Shopping Center built, and leased to Walgreen, a new structure having a usable store space of 22,624 square feet, on a lot with a frontage of 127½ feet and a depth of 168 feet. The new building occupied part of the land which Walgreen had been occupying, but extended to cover additional land to the west. The term of the agreement was 21 years, starting on the day Walgreen commenced business in the new building. In the new store the restaurant or snack bar occupied the same relative position as the one in the old store, but its floor area was tripled and the number of seats was increased to 93.

During the course of construction of the new building, in June 1966, Big Chief wrote letters of protest to Newport Shopping Center and Walgreen, asserting a violation of the restrictive covenant in Big Chief's lease. The construction of the building was continued, however, and it was completed in January 1967. Shortly thereafter the instant suit was brought.

We think the determination of the case depends upon what was the intent of the restrictive covenant. (For the purposes of discussion we shall assume that Walgreen was bound by the covenant, although this is doubtful since Big Chief's lease was not recorded and Walgreen had no actual or constructive notice of it prior to the execution of the agreement for Walgreen's new building.) It seems clear to us that the intent of the covenant was to protect Big Chief against *new* competitors, not against a mere increase in the *size* of the operations of existing competitors. Plainly, it is not the *location* of Walgreen's new restaurant facilities that hurts Big Chief, but the *size* of those facilities. Under the express terms of the covenant Walgreen could have increased the size of the restaurant facilities in its original store because that was allowable under its original lease. It may be true that Big Chief did not anticipate that Walgreen *would* enlarge its restaurant facilities in its original store, but the covenant did not protect him against that being done.

Whether the agreement for Walgreen's new building was a new lease or merely an extension of the original lease is immaterial, we think, because nothing related to that question is responsible for the damage Big Chief claims to have suffered. Had

Walgreen and Newport Shopping Center executed a completely new lease for the *original* store premises Big Chief surely would have had no cause to complain, because the new lease would not cause any damage the covenant was designed to guard against.

The fact that the agreement for the new building made it more practicable for Walgreen, according to its merchandising policies, to enlarge its restaurant facilities does not help Big Chief's case, because Big Chief had no right to rely on its understanding of what Walgreen's merchandising policies were. The covenant protected Big Chief only against action not *allowed* by current leases, not against allowable action that a lessee simply had not yet chosen to take.

The judgment is affirmed.

All concur.